Good morning, Your Honor. My name is Kendall Moser. I'm a Deputy Attorney General with the Department of the Attorney General, State of Hawaii, and I represent the appellants who are Thomas Read and Mehdi Simmons. Good morning, Your Honor. Philip Miyoshi on behalf of Appellee Matthew Beckstrand. I'm sorry, could you just say your name again? Philip Miyoshi. Okay, thank you. Had it as a different name on my calendar here. I think I had Mr. Wolf. Thank you. Your Honors, we've been given 15 minutes per side. I would like to reserve five minutes for rebuttal, if I may. All right. And I will keep my eye on the clock here. We'll both try. Thank you, Your Honor. As I indicated, I represent Thomas Read and Mehdi Simmons. Both were State of Hawaii employees at the relevant time. Mr. Read no longer works with the state and Ms. Simmons does. Mr. Read and Ms. Simmons followed the law in this case. The issue on appeal then is whether they are entitled to qualified immunity. When I say that they followed the law, what I mean is that they followed the state court judgment, they followed the state's sentencing statute, and they followed Supreme Court of Hawaii case law. In connection with, quote, following that law, did they check with the judge who amended the sentencing order to make it run concurrent, which resulted in Mr. Beckstrand spending 70 plus days in jail? Excuse me, Your Honor. There's nothing in the record to indicate that either Mr. Read or Ms. Simmons contacted. So it was their interpretation of the sentencing documents and Hawaii law without checking with the judge? They did not check with the judge. Or with the county attorney or district attorney or state attorney general's office? There's nothing in the record to indicate that. Or either of them lawyers? Mr. Read is an attorney, Your Honor, yes. Member of the bar? Not of the Hawaii bar. He was an assistant United States attorney for the Northern District of Alabama and was for a number of years an assistant general counsel with the Federal Bureau of Prisons. In a perfect world, would you agree that the better thing to have done would have been for them to either check with the judge or seek legal advice as to whether this individual was entitled to be released? I think in light of this litigation, that is something they would do, yes. The difficulty we have, and I'm sure you can appreciate it, is that, of course, we have to determine whether there's settled law or constitutional violation in connection with this. Yes. But if we were to determine that there's not, then what is the effect of a court order? Because you have then somebody at the prison, somebody, even a lawyer in the AG's office saying, well, that's not right. Here's really what's right. So it's like having a nonjudicial court of appeals, so to speak, that doesn't have any parameters. And that's what's troubling to me about the case is that you do not want to find, we don't want to find ourselves where individuals can just decide, well, that court order isn't right, basically, because that's what they decided here. Well, what they decided, Your Honor, is that they had a judgment which was complete in and of itself. It said what the original charge was. It said what the charge was that Mr. Beckstrand pled guilty to. It sets out his sentence. It says that he is to receive credit for time served. It is our position, and as the case law indicates, that the judgment is the operative document. The judgment entered in November of 2006. And then three months later, for whatever reason, the public defender and the county prosecutor entered into a stipulation that Mr. Beckstrand received credit on his state sentence, for which judgment had already entered, for time that he had only been in custody on his federal bank robbery charge. And is that entered in the court? The judge signed the stipulation, so the document is called stipulation and order, and it was entered or filed. So you have a judge sign. You have a judgment that says A, and you have a judge signed order that says B. Yes, that's what happened here. And they got to pick and choose. Well, the judgment came first, and the case law is that the judgment is the operative document. They followed the judgment. Well, weren't they presented with B? Yes, they had. Didn't Mr. Beckstrand provide them with B? I don't think it was even he who provided it to them. Most likely, when he came into their custody, they received both. Someone did. Yes, they had. That B was in front of them. Yes, they had knowledge of it. They had it available to them, B. Did they suggest that there was something inaccurate about B, if you will?  So my question is, did they think it was an illegitimate, the documents Beckstrand provided or that were provided on his behalf, did they think they were illegitimate? If Your Honor means by illegitimate that... Forged or something like that. No, they did not believe that they were forged, that it was forged. Instead, they understood that it was not in compliance with state law. So they looked at A and B, and they said, it's obvious to us that the judge involved in B didn't know what he or she was doing, so we can ignore that. It was the same judge who entered both the judgment and the stipulation in order three months later. That kind of makes it worse for your clients, doesn't it? How so, Your Honor? Well, if you have the judge who enters the original judgment and then decides in effect that he's going to change that, he basically, maybe he's wrong as a matter of law. I'll grant you that, given all the various statutes on whether you can credit that federal time. So maybe he's wrong as a matter of law, but why would you leave state employees to basically pick one order over the other when it's one and the same judge who's actually had the case, looked at the case, and made this determination? Why isn't that something left for the courts, not for someone within the prison system to make the decision? Well, Your Honor, the B, as we've been calling it, the stipulation in order, is clearly not valid. Because? Because it's not authorized by law. The judge is not authorized to grant that credit. I agree, but who should be making that decision? I mean, that would basically say if the judge orders a certain condition of confinement that's actually not permitted because circuit or state or some other law, you basically would say, well, we're going to leave that to state and county employees to decide. We're not going to take that to court. I mean, where would it end? I mean, every time somebody comes up, you have a court order, say, you know what, that judge is just wrong. Well, I see. The way we look at this case, Your Honor, and the way we've approached it, is that Mr. Reed and Ms. Simmons had a conflict. They had to make a decision. Do we follow the judgment or do we follow the order? That wasn't that. You sort of lay it out as if it's a binary decision. That's the way we see it, yes. But any reasonable person would say, hey, we've got A, we've got B. We better find out if this one is legitimate or not because it's second in time. It's the same judge. Don't you think we ought to maybe consult with the county attorney or someone ought to go back to the judge and say you can't do this? Well, the court is well aware what the standard is for qualified immunity. It is whether the defendants, and in this case the state employees, were plainly incompetent, which has never been argued, or they knowingly violated the law. And the law is not that a defendant has the right to pre-sentence credit. But if the law is that they knowingly violated a court order, right? I'm not saying whether it's right or wrong, they knowingly violated it. I don't see it that way, Your Honor, and they don't either. What they see. I know they don't, but the fact is, did they follow the court order? They followed the judgment. Did they follow the court order? They did not follow the court order. They followed the judgment, which is valid. And the court order is invalid for all the reasons that we've argued to the court. It violates the state statute. It violates state Supreme Court case law. The reason it's troubling is that you might in the end be right under qualified immunity, but it certainly leaves, I would think, any court and any lawyer with a huge pit in your stomach to think that somebody can just decide, you know what, I think that judge was wrong. And that's really what they did. So let's assume that the law were not clearly established at the time. Let's just assume that. Do you think that if a defendant has a court order ordering the county to do something and they don't do it results in his extended incarceration, that that's a constitutional violation? Assume there's no law right now. There's just like a blank slate. Do you believe going forward that there would be a constitutional violation? I guess if we were in trial I would object and say it's an incomplete hypothetical, but to the extent I understand the court's hypothetical, I would agree as a general proposition that it's unlawful to over-detain someone in prison. Of course, I don't know all the blanks in the order that Your Honor is suggesting in the hypothetical. So I think in hindsight, if this happens again somehow in the state of Hawaii, it would be better to, as Judge Hawkins suggested, to make a phone call, what have you, bring it to someone's attention other than the plaintiff. And remember, please, that the plaintiff was told repeatedly in 2008, he had remedies available to him if he disagreed first with his parole officer who's not a defendant. Why should he go? He already got a court order. He was like on the upside of this deal. I think that when everybody and their dog is telling him, sir, you're not entitled to this credit, and then he asks, well, let me talk to somebody else in PSD, and they tell him that, and, well, I want to talk to your supervisor, Mr. Reed, and Mr. Reed, the attorney, tells him that, then there's no reason that I know of that he could not, especially while he's out on parole, that he couldn't have gone and sought some sort of a writ. I'm sorry. I didn't mean to interrupt you. I didn't mean to interrupt you. So, but it's the state's position, then, when it comes down to the ability of the state to deprive an individual of their liberty, that the burden to establish any question about the authority to over-detain, if you will, should lie with the prisoner. In these circumstances, I think the prisoner should have gone back to the court. And forgive me if I find that as sort of element two or three of a totalitarian regime that would not have the presumption of innocence and say, in situations like this, it's up to the incarcerated or parole violator to defend their own rights. Well, one thing I think procedurally, Your Honor, that we should all bear in mind is who the defendants are in this case. Mr. Reed and Ms. Simmons are sued in their individual capacity in a 1983 action. It seems, then, that the more appropriate defendant could have been either the warden or the director of the Department of Public Safety to whom the issue of the minimus issued, saying, carrying out this judgment, maybe the state of Hawaii. But here we have the Offender Management Office administrator and one of his legal assistants. I'm not even sure that those are the right people to have sued, but here we are. And the plaintiff is the master of his complaint, and that's who he chose to sue, and those are the theories under which he brought his claims. Well, if your concern is, as I sort of read between the lines, that if the panel, big if, that's always a concern. The key to that cell block is in your hands to settle this case and do away with the underlying judgments. Just a thought. Thank you. Do you want to save the remaining time? If I may, please. Thank you. Good morning, Your Honors. Philip Miyoshi on behalf of Matthew Beckstrand. I'd just like to make a couple of remarks about counsel's comments. I think, first of all, although Mr. Reed may have been an attorney, he was not acting in the capacity as an attorney when he was an employee with the state of Hawaii. So I just wanted to be clear. I think, secondly, with respect to the judgment, the judgment clearly indicated that there was going to be credit for time served in the judgment, and so I think the fact that there was a pre-sentence credit and order that came after that really should not be surprising to anybody. The state's position is that the document, B, if you will, violated Hawaii law. What's your position on that? We've looked at the three things that, or the couple of things that they've cited to in saying that it was a violation of state law for Judge Stranz to give Matthew Beckstrand credit for time served in the federal facility. The first thing they point to, obviously, is the statute, HRS 706-671, and I think, as Judge Mulway noted in her order, is that the version of 706-671 at the time of their interpretation, at least when they calculated Mr. Beckstrand's sentence, did not expressly forbid any credit for time served in a federal facility. After that, it was amended, and clearly the language after that made reference to time in a federal facility, but at the time that they calculated the sentence, there was no express, the statute didn't expressly forbid credit for time served in a federal facility. The second thing that the appellants point to is the case of Hawaii v. March or March v. Hawaii. Obviously, that case clearly predated the sentence that came down with respect to Mr. Beckstrand, and as Judge Mulway noted, presumably the judge, the prosecutor, and defense counsel were all aware of that particular case, and for whatever reason, reasons which we don't know, they interpreted or they concluded differently from that case. And so our position, and we would submit to the court, that it wasn't the province of the DPS officials to then supplant their interpretation for whatever the court's interpretation was of March v. Hawaii. And in that instance, whether or not it was against the law for, or whether it wasn't consistent with state law for Judge Stranz to offer or provide credit for time served in a federal facility, we'll never know those reasons because she never provided any written findings or conclusions of law. We do know that she did provide them, and that was a valid, a facially valid court order at the time that the DPS officials chose to purposely disregard. But what if they're right as to the law? Isn't it up to them to take the risk as to whether they're right or not? And if they're right, they have immunity. Well, I think if they're, we don't look at it that way, Your Honor. I think the way we look at it is that the right at the time, the law in existence at the time, was the judge's order. The order. What if the law was invalid under Hawaii law? The law was invalid. They take the risk of taking the position the law is invalid. If we're wrong, then we don't have immunity. If we're right, we do have immunity. With respect to the actual law, I think the problem with that analysis is we don't know. Nobody's ever made a determination that, in fact, they were wrong. Should we certify this question to the Hawaiian Supreme Court? Obviously, that would. Mr. Reed and his partner were correct. That certainly is obviously the prerogative of this court. I think that, though, if you look at the analysis of qualified immunity, and I'm assuming we've kind of gone beyond the absolute immunity issue and we're not going to address Engelbretson v. Mahoney, but if we're simply looking at the qualified immunity analysis. Let me ask you your position. Do you agree with Mr. Moser that Reed and the other defendant were correct as to their interpretation of Hawaiian law, that the credit for time served was not available and should not have been granted by the judge? I don't know, Your Honor. You don't know? You don't have one position one way or the other? Well, I certainly think if you look at March v. Hawaii that one could, at the time in 2008, one could have read that case in a manner that is consistent with how the DPS official was reviewing whether or not credit for time served could have been viewed. All right. That's a reasonable way to read March v. Hawaii, right? Yeah. Now, do you have any authority that the position taken by the defendants in this case, the appellants, was wrong as a matter of Hawaiian law? I don't have any authority that their interpretation of State v. March was wrong. I do have a position that their interpretation of the judgment in the order was wrong, and that's really the only thing that they were subject to at the time of calculating. I guess that raises a question. Do you think under qualified immunity framework, we should actually be determining whether Hawaii law was correct or incorrect, whether this order, Order No. 2, was correct or incorrect? I think the analysis, Your Honor, is, number one, to determine first if Mr. Beckstrand had a right to have his sentence calculated correctly as determined in the sentencing orders handed down by Judge Strass. So I guess that's a backhanded way of saying you don't think we actually need to decide what would be, if we were the judge in Hawaii, what would be the answer under Hawaiian law? I don't think so. So now let me ask you another wrinkle on your case, because the district court, as I understand it, granted the county's motion on the Eighth Amendment and the due process claim, and those are not appealed. That's correct. With respect to the statute of limitations, Your Honor. Right. Well, it just means you don't have a claim under those. So a lot of the district court order, to be honest, seemed to weave back in constitutional principles from the Eighth Amendment and Fifth Amendment due process. As I understand it, your only remaining claim is whether there's qualified immunity with respect to a Fourth Amendment claim, correct? That's correct. So do you have any law that would tell you, as a matter of clarity, that the Fourth Amendment would apply in a post-conviction situation such as this? Fourth Amendment. Right. As I understand it, and we haven't cited to any authority in our case law, Your Honor, I think I would just go back to the fact that if you look at the way we would view it, at least with respect to the judgment and the order, on October 2009, the maximum term of his sentence expired, at least pursuant to Judge Stranz's judgment and order, okay, because she had given him credit for time served from October 31st, 2004. The purported violation or his parole violation that they alleged Bechtran violated occurred after that time period where he didn't, essentially he didn't tell them of his new address change. So he changed address. You're required under the parole conditions to notify the parole officer of that. Can I just get back to my precise question? Yes. And maybe you answered it at the beginning of your answer, which is you don't know of any Fourth Amendment law that would basically say in this post-conviction situation that there's been a constitutional violation. That's correct. Okay, but if that's the case under the prongs that we look at for qualified immunity, isn't that end of case qualified immunity granted? We don't think so. I think the way we're looking at it, Your Honor, is that when his kind of this new period arose, after the maximum term of his sentence expired, he was essentially a free man. And what the DPS officials did at that time was they took actions that essentially limited his freedom by miscalculating the sentence. So maybe if you're right, I mean, I know factually what you're saying, but imagine you're in our situation trying to put this in the rubric of qualified immunity. What case do we cite you're going to offer up for us so that we can say that under the Fourth Amendment, the circumstance you're talking about clearly fits within the Fourth Amendment umbrella? Well, I think the court could go back to all of the principles that make up the qualified immunity analysis. You really have two things to decide in qualified immunity. One is whether there was a constitutional violation. Let's assume that the panel agrees with the district court and says there was a constitutional violation. The second prong is, was it clearly established? That's what we're getting at. Because even I think county counsel suggested that one might find a constitutional violation. I don't want to pin him down, but one might. So we'll just assume it for talking purposes. And I think how Judge Mulway kind of set it forth in terms of whether or not this was a clearly established right at the time the violation occurred, what she really looked at was the very essence of a judgment. Essentially what Judge Mulway stated in her order was that Bextran had a right to have his sentence deemed ended when it actually was supposed to have ended pursuant to the district court. That sounds like a due process right to me, though. Not a Fourth Amendment right. Well, I guess the result of that, the result of them not, the result of them not complying with the judgment and order essentially resulted in his incarceration, in his wrongful incarceration. But I'm still looking for the clearly established law because her order seems to wax and wane between what is more like the Eighth Amendment and the due process. And it may just be, you know, the situation may be that having lost on those two claims, you are kind of stuck in the Fourth Amendment. So I'm just looking for your answer on the Fourth Amendment, which we can't just say, well, there's a constellation of cases out there. That wouldn't really give us a clearly established foundation. Yeah, and I guess I think the way we would submit to the court that, and understanding there the struggle between some of the due process and Fourth Amendment, I think the, you know, and we kind of went back and forth with the judge on this with respect to the statute of limitations issue regarding the Eighth Amendment and when his actual injury occurred. And so, you know, I think with respect to what Judge Moway was saying in here, I think we would simply submit that. We still believe under the principles of a qualified immunity that he had a right to be, he had a clear right for his sentence to be determined in the manner consistent with the judgment and the order. They violated that. Even if it was invalid under Hawaii law? Yes, even if it was invalid under Hawaii law. Because I think they had a duty to follow the law. They had a right to rely on a facially legitimate judgment even if the judgment is infirm under the substantive law under which it was emitted. Our position is that Mr. Bechtrin had a right to rely on the judgment in order. I haven't cited any authority for that proposition, Your Honor. Other than the district court. That's what I'm having some trouble with. All right. Nothing further. Thank you. Thank you. I have a minute and 38 seconds, so I'll speak as fast as I can, but hopefully clearly. Back to a question or two that Judge Bea asked of counsel a moment ago. State v. March, as cited among other places on page 10 of our opening brief, says, quote, a sentence that credits a defendant with the time served for an unrelated offense is illegal because the sentencing court is not authorized by Chapter 706 to grant such a credit. I think that's reasonably clear to all of us. And that's the law that Mr. Reed and Mr. Simmons followed. They knew that. That law is part of their sentence computation policy, and as Mr. Reed said in Paragraph 5 of his declaration attached or submitted to the court in connection with their summary judgment motion, he said in calculating Mr. Bechtrin's sentence, we followed the Department of Public Safety's sentence computation policy. The court is correct that the Eighth and Fourteenth Amendment claims were disposed of by summary judgment, leaving only the Fourth Amendment claim remaining. And, again, Your Honors, we would respectfully submit that because they followed the law, because they had to make a judgment call, they went that way. They followed the judgment, and we believe, therefore, that they're entitled to qualified immunity as state employees in this 1983 action. You understand that even if the panel were to conclude that this was a constitutional violation but not clearly established, therefore, qualified immunity, that a disposition by this court would still name your clients and describe how they violated the Constitution? I understand that, Your Honor. Okay. Thank you. They understand that. Thank you. All right. Thank you. Thank you very much. The case disargued, Thompson v. Scott, is submitted. Oh, excuse me. The Bechtrin, Bechtrin v. County is submitted.
judges: Hawkins, McKeown, Bea